IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY,<br>an Illinois Corporation, | ) ) ) | CIVIL NO. 07-00360 SOM/BMK |
| Plaintiff, | ) ) ) | ORDER GRANTING MOTION FOR<br>SUMMARY JUDGMENT |
| vs. | ) ) | |
| JOSEPH ANTHONY SYLVESTER; and<br>HALE MANA, LLC, | ) ) ) | |
| Defendants | ) ) | |
| and | ) ) | |
| VIVIAN L. HOETTE; and BERLYN<br>C. HOETTE, | ) ) ) | |
| Intervenors. | ) ) | |
| _____ | ) | |

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

This is a diversity action involving insurance coverage. Frances Lee Morey and Joseph Anthony Sylvester own a beach-front house on Kauai, Hawaii. They live in a different house and rent out the beach-front house to visitors who stay there in lieu of a hotel. Instead of a commercial insurance policy that provided liability coverage for their hotel-like business, Morey and Silvester purchased a deluxe homeowner's insurance policy from Allstate Insurance Company. In October 2006, during the policy period, Vivian Hoette was injured while renting a room in the beach-front house.

In January 2007, Hoette and her husband sued the Turtle Cove Suites and Hale Mana, LLC, in state court for her injuries. Turtle Cove Suites was the name Morey and Sylvester gave their beach-front house, and Hala Mana, LLC, was the entity Morey and Sylvester created to rent the hotel-like accommodations. Although he was not named as a defendant in the Hoettes' state-court action, Sylvester appears to have tendered the defense of this state-court suit to Allstate, which is providing a defense to Hale Mana under a reservation of rights.  Allstate then filed the present action, seeking a declaration that it does not have a duty to defend or indemnify Turtle Cove Suites or Hale Mana in the Hoettes' state-court suit.  The Hoettes intervened in this action.

Because Turtle Cove Suites and Hale Mana are not named insureds under the homeowner's policy, and because the policy does not cover injuries arising out of the vacation rental business in issue here, the court grants Allstate's motion for summary judgment.  Allstate has no duty to defend or indemnify its insureds under the homeowner's policy.  Pursuant to Local Rule 7.2(d), the court decides this motion without a hearing.

II.     SUMMARY JUDGMENT STANDARD.

Effective December 1, 2007, Rule 56(c) of the Federal Rules of Civil Procedure has been amended.  Summary judgment shall be granted when "the pleadings, the discovery and

2

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (effective Dec. 1, 2007). "The language of Rule 56 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only." Rule 56 Advisory Committee Notes, 2007 Amendments. Because no substantive change in Rule 56(c) was intended, the court interprets the new rule by applying precedent related to the prior version of Rule 56(c).

One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See Celotex, 477 U.S. at 323. A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls on the moving party to

identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987.  "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.  Nissan Fire, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  Miller, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial."  Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  "A genuine

dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

III.   BACKGROUND FACTS.

   A.   The Policy.

Allstate insured Morey and Sylvester under a deluxe homeowner's insurance policy, number 0 07 144075 ("Policy"). The Policy covered the period from January 31, 2006, to January 31, 2007, and insured property located on Puuholo Road, Koloa, HI 96756.

Under Coverage X of the Policy, "Allstate will pay damages which an **insured** person becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies." See Policy at 19. However, the Policy does not "cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**." Id. at 20.

The insureds named in the Policy are Morey and Sylvester. The Policy defines "Business" as "any full or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes." Policy at 3. The Policy also defines "Business" as "any property rented or held for rental by an insured person. Rental of your residence premises is not considered a business when: 1) it is rented occasionally for residential purposes." Id.

      B.    <u>The Vacation Rental Business.</u>

Morey and Sylvester, who are married, purchased the property on Puuholo Road in February 1990. See Deposition of Joseph Anthony Sylvester (Apr. 11, 2008) at 8-9. They began renting out "suites" in 1996 or 1997, while apparently also living in the house. Id. at 36-37. In April 2006, they moved out of the Puuholo Road house and into a home on Uha Road. The Puuholo Road house currently has four "suites," each with a separate entrance, and is being used as a full-time vacation rental. Id. at 7-9, 11, 18. Morey and Sylvester still sometimes stay at the Puuholo Road house on long weekends if there is a vacant room. Id. at 7-8, 11.

Morey and Sylvester call their Puuholo Road vacation rental property "Turtle Cove Suites." Id. at 8. All rental money from the Turtle Cove Suites vacation rental business goes into Hale Mana, a limited liability company with Morey and

Sylvester as its members. Id. at 26. They charge between $155 and $225 per night for each of the four "suites." Id., Ex. 1. In 2006, rental of the Turtle Cove Suites grossed approximately $125,000. Id. at 12. The property is marketed over the internet through Kauaibeachrentals.com, VRBO.com, and Homeaway.com, and is listed on Frommer's website. Id. at 13, 22, 24. The occupancy rate of the Turtle Cove Suites is about 60%. Id. at 30.

      C.    The State Court Suit.

On January 18, 2007, Vivian and Berlyn Hoette sued "K Turtle Cove Suites" and Hale Mana in state court. See Complaint, Civ. No. 07-1-0008 ("State-Court Complaint"). The State-Court Complaint alleges that, in October 2006, Vivian Hoette reserved the "Ocean Suite" of the Turtle Cove Suites and fell as she was entering it, right where the height of the floor allegedly changed. Id. ¶¶ 6, 7. Hoette alleges that she fractured her hip and had to have hip replacement surgery. Id. ¶ 8.

IV.    ANALYSIS.

      A.    General Law Governing Insurance Contracts.

This is a diversity action. See Complaint (July 5, 2007) ¶¶ 1-5. Federal courts sitting in diversity apply state substantive law and federal procedural law. See Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001). When interpreting state law, a federal court is bound by the decisions

of a state's highest court.  Ariz. Elec. Power Coop. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995).  In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  Id.; see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation and brackets omitted)).

Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts. Dawes v. First Ins. Co. of Haw., 77 Haw. 117, 121, 883 P.2d 38, 42 (1994).  Under Hawaii law, an insurance policy must be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended. Id. at 121, 883 P.2d at 42; First Ins. Co. of Haw. v. State, 66 Haw. 413, 423, 665 P.2d 648, 655 (Haw. 1983); see also Haw. Rev. Stat. § 431:10-237 (Michie 2004) ("[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy").

Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any

ambiguity must be resolved against the insurer.  Put another way, the rule is that policies are to be construed in accordance with the reasonable expectations of a layperson.  Dawes, 77 Haw. at 131, 883 P.2d at 42.

The burden is on the insured to establish coverage under an insurance policy.  See Sentinel Ins. Co. v. First Ins. Co. of Haw., 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (1994) (as amended on grant of reconsideration).  The insurer has the burden of establishing the applicability of an exclusion.  See id. at 297, 875 P.2d at 914.

The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion." Dairy Road Partners v. Island Ins., 92 Haw. 398, 413, 922 P.2d 93, 108 (2000).  The obligation to defend an insured is broader than the duty to indemnify.  The duty to defend arises when there is any potential or possibility for coverage.  Sentinel, 76 Haw. at 287, 875 P.2d at 904.  However, when the pleadings fail to allege any basis for recovery under an insurance policy, the insurer has no duty to defend.  Pancakes of Haw. v. Pomare Props., 85 Haw. 286, 291, 944 P.2d 83, 88 (1997).  In other words, for Allstate to obtain summary judgment on its duty to defend, Allstate must prove that it would be impossible for a claim in the underlying lawsuit to be covered by the Policy.  See

Tri-S Corp. v. W. World Ins. Co., 110 Haw. 473, 488, 135 P.3d 82, 97 (2006).

"Hawaii adheres to the 'complaint allegation rule.'" Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) (citing Pancakes of Hawaii, Inc. v. Pomare Props. Corp., 85 Haw. 286, 994 P.2d 83 (Haw. Ct. App. 1997)).  In that regard,

> The focus is on the alleged claims and facts. The duty to defend "is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract. 'Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend.'"

Id. at 944-45 (citing Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76 Haw. 166, 872 P.2d 230)).

  B. <u>Allstate Has No Duty to Defend or Indemnify.</u>

    1. <u>Turtle Cove Suites and Hale Mana, LLC, are not Insureds under the Policy.</u>

The State-Court Complaint seeks damages from Turtle Cove Suites and Hale Mana arising from injuries Hoette says she suffered when she fell at the vacation rental home. Although Hala Mana is Morey's and Sylvester's company, and although Turtle Cove Suites is the vacation rental name of the Puuholo Road property, neither Hala Mana nor Turtle Cove Suites is an insured under the Policy. The Policy's insureds are only Morey and Sylvester. Because the State-Court Complaint does not seek

damages from an insured under the Policy, Allstate has no duty to defend or indemnify anyone in the state-court case.  See Del Monte Fresh Produce (Haw.), Inc. v. Fireman's Fund Ins. Co., 2007 WL 4533151, 11 (Haw. Dec. 26, 2007) ("we hold that Del Monte Fresh is not an insured under any of the Defendant-Appellant insurers' policies, and is therefore not owed duties to defend or indemnify by Defendant-Appellant insurers."); Tri-S Corp., 110 Haw. at 490-491, 135 P.3d at 99-100 (stating that, in order for an insurance company to have a duty to defend or to indemnify a defendant in an underlying case, the defendant in the underlying case "must first be an insured with respect to the claim made against him").

    C. Claims Arising Out of Sylvester's and Morey's Business are not Covered By the Policy.

Even if Turtle Cove Suites and/or Hale Mana qualified as an insured under the Policy, Allstate would have no duty to defend or indemnify anyone in the state-court case because the claims in that case arise from a business.  The Policy states that "Allstate will pay damages which an **insured** person becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies."  See Policy at 19.  This coverage under the Policy, however, is subject to a number of exclusions, one of which provides that the Policy does not "cover **bodily injury** or **property damage** arising

11

out of the past or present **business** activities of an **insured person**." Id. at 20. The Policy defines "Business" as "any full or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes." Policy at 3. The Policy also defines "Business" as "any property rented or held for rental by an insured person. Rental of your residence premises is not considered a business when: 1) it is rented occasionally for residential purposes." Id.

The exclusion of coverage for business activities correlates to the cost of insurance:

> The apparent purpose of the "business pursuits" exclusion from personal liability coverage in a homeowner's policy is to eliminate the high cost of insuring the risks attendant to commercial enterprises, thereby making homeowner's insurance available at lower rates. There is obviously a lower risk in insuring a building used as a residence than one used for business purposes. This consideration is also reflected in (1) the exception to the business pursuits exclusion, which excepts activities ordinarily incident to nonbusiness pursuits, and (2) the exclusions from the policy definition of business, which exclude occasional rental as well as the rental of a portion of a building used primarily as a residence.

Blue Ridge Ins. Co. v. Newman, 453 So. 2d 554, 556 (La. 1984).

The rent for the suites at the Puuholo Road property ranges from $155 to $225 per night, and, in 2006, Hale Mana received approximately $125,000 for the rental of the suites. See Sylvester Depo. at 12 and Ex. 1. Sylvester testified that

managing his real estate properties, including the Turtle Cove Suites, is his sole occupation.  Id. at 8.  The property is marketed over the internet, and the suites are offered for rental every day.  Id. at 8, 9, 11, 13, 18, 22, 24, Ex. 1.  Morey and Sylvester, who were living at another property at the time Hoette rented a suite, stayed at the Turtle Cove Suites only on long weekends when a suite was vacant.  Id. at 7, 11, 34.  Under these circumstances, the "business" exclusion applies.  Hoette's alleged injuries arose from the operation of a full-time "business" at the insured property.  See Policy at 3.  The rental of the Turtle Cove Suites constituted "full or part-time activity of any kind engaged in for economic gain," and Turtle Cove Suites was "property rented or held for rental by an insured person."  See Policy at 3.

   Sylvester and Hale Mana argue that the Turtle Cove Suites vacation rental business is not a "business" for purposes of the Policy.  They contend that the suites there are rented only "occasionally for residential purposes" and that the rentals therefore do not fall within the definition of "business."  This court disagrees.

   Although the Policy does not define "occasional" or "occasionally," the definition of those terms advanced by Sylvester and Hale Mana is unnatural.  Morey and Sylvester moved out of the insured residence in April 2006, six months before the alleged accident.  The business grossed approximately $125,000 in

13

2006. If the highest rate of $225 per night was paid every night of 2006, the suites at the Turtle Cove Suites were rented about 555 times that year. If the cheapest rate of $155 per night was paid, the suites were rented approximately 806 times in the same one-year period. In other words, averaged over the course of a year, some part of the Turtle Cove Suites was rented every night that year. Sylvester himself estimated the occupancy rate of his business to have been about 60%. See Sylvester Depo. at 30. This rental frequency was not "occasional."

In State Farm Fire & Casualty Company v. Wonnell, 533 N.E. 2d 1131, 1133 (Ill. App. 1989), the court reviewed an insurance policy provision that permitted the use "on an occasional basis for the exclusive use as a residence." The court held that the provision referred to "arrangements to rent one's residence while away on vacation or on a business trip" and not to "a full time rental after the owner has moved out of the residence with no intention to return." The Wonnell court reasoned that the "exception was to allow the insured to rent his or her residence while living elsewhere temporarily, but with the intention to return there to live." Nothing about the circumstances here indicates that Morey and Sylvester were living elsewhere only temporarily.

The Court of Appeals of Washington has noted that, when interpreting a homeowner's policy,

14

> An "occasional" rental should be interpreted consistent with the purposes of a homeowner's insurance policy, as opposed to a landlord's insurance policy. That means that the circumstances of the rental must not negate the assumption that the homeowner is still the primary resident of the house, despite his or her temporary absence.

State Farm Fire and Cas. Co. v. Piazza, 131 P.3d 337, 338 (Wash. App. 2006). Morey and Sylvester cannot be said to have been the primary residents of the Turtle Cove Suites at the time Hoette allegedly fell. The evidence establishes that they lived elsewhere, attempted to rent out suites on a full-time basis, and only stayed in a room on the insured property when it was unoccupied for a long weekend.

Under Hawaii law, an insurance policy is to be construed in accordance with the plain meaning of its terms. See Dawes, 77 Haw. at 121, 883 P.2d at 42 (1994); First Ins. Co. of Haw., 66 Haw. at 423, 665 P.2d at 655. The plain meaning of "occasional" is "Occurring from time to time" or "Not habitual; infrequent." The Am. Heritage Dictionary of the English Language (4th ed. 2000), http://www.bartleby.com/61/94/O0019400.html; accord Merriam-Webster's Online Dictionary (last visited May 21, 2008), http://www.merriam-webster.com/dictionary/occasional, ("encountered, occurring, appearing, or taken at irregular or infrequent intervals"). "Occasionally" is similarly defined as "Now and then; from time to time; sometimes." The Am. Heritage Dictionary of the English Language (4th ed. 2000),

15

http://www.bartleby.com/61/95/O0019500.html; accord Merriam-Webster's Online Dictionary (last visited May 21, 2008), http://www.merriam-webster.com/dictionary/occasionally ("on occasion: NOW AND THEN").  Given the nature and frequency of the Turtle Cove Suites rentals, those rentals cannot be characterized as "infrequent" or as having happened only "now and then."

        The court is unpersuaded by Sylvester's and Hale Mana's reliance on cases such as Hess v. Liberty Mutual Insurance Company, 458 So. 2d 71 (Fla. App. 1984).  In Hess, the court ruled that an insurance policy's reference to property that was "occasionally rented" did not "refer to the situation where a father co-signs a one year lease for his daughter.  Rather it refers to rentals occurring now and then, such as vacation rentals."  Id. at 72.  Sylvester and Hale Mana argue that a "vacation rental," as used in Hess, qualifies as property that is "occasionally rented" no matter how extensive the rental.  The Hess court, however, did not explain what it meant by "vacation rentals."  Newman, Wonnell, and Piazza view property as occasionally rented when the property is the insureds' primary residence and is rented out to others while the insureds are away on a vacation or for some infrequent period.  Hess's reference to "vacation rentals" may well have been to a similar kind of rental.  Morey's and Sylvester's full-time vacation rental business is not covered by their homeowner's insurance policy.

The court also rejects the argument advanced by Sylvester and Hale Mana that the Policy is ambiguous. They contend that the word "occasionally" is ambiguous and must be construed in accordance with the reasonable expectations of a layperson. Dawes, 77 Haw. at 131, 883 P.2d at 42. The problem with this argument is that "occasionally" is not susceptible to any meaning helpful to Sylvester and Hale Mana. In fact, they do not explain what definition of "occasionally" would be helpful to their position. Even if "occasionally" is construed in the manner most favorable to them, the insureds could not be said to have rented out the Turtle Cove Suites "occasionally." To the contrary, the insureds' business was renting out suites at the Turtle Cove Suites year-round. A reasonable layperson would not have thought he or she was only "occasionally" renting out property under such circumstances.

        D.    <u>Allstate is Not Estopped From Denying Coverage.</u>

Sylvester and Hale Mana argue that Allstate is estopped from denying coverage because Allstate knew about the rental business. The only evidence in the record tending to support this statement is contained in Sylvester's deposition. Sylvester testified that, at some point before 2006, he had "discussions" with an Allstate representative named Annette Mundon and received "assurances" that he was "covered." See Sylvester Depo. at 35. Those discussions occurred "years ago," because his insurance

17

agent changed to the Buenconsejo Allstate Agency "years ago." Id.

Accepting Sylvester's statements as true for purposes of this motion, the court sees no genuine issue of fact on the estoppel issue. Sylvester does not describe what was told to him. It is undisputed, however, that the rental business began in 1996 or 1997, while Sylvester and Morey still lived at the Puuholo Road house. In April 2006, however, they moved out. The house was then used as a rental on a full-time basis, with Sylvester and Morey staying there only on long weekends if a suite was vacant. Even assuming an Allstate agent told them that the Policy covered their rental business while they lived in the house, the nature and character of their use of the home changed when they moved out of the house. Nothing in the record indicates that Allstate told the insureds that liability coverage would continue under their homeowner's insurance policy if they moved out of the house and started a full-time rental business.

The court notes further that Sylvester's deposition testimony states only that his understanding was that "we were covered, and that is based upon my discussions with and assurances that I received from the Allstate representative here in Lihue." Id. Being led to believe one is "covered" is not the same as being led to believe one is "covered for liability arising out of conducting a business." Regardless of whether

18

they were conducting a vacation rental business at the Puuholo Road property, Morey and Sylvester might have been told they were "covered" with respect to any event falling within the Policy's terms and not excluded. If a runaway truck crashed through the front door, for example, that might have been a covered occurrence. In short, being told one is "covered" would not, without more, be a misrepresentation justifying estoppel under the circumstances before this court.

V.      CONCLUSION.

For the reasons set forth above, Allstate's motion for summary judgment is granted. All pending motions are denied as moot, and the Clerk of Court is directed to enter judgement in favor of Allstate and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 21, 2008.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Allstate Insurance Company v. Sylvester, CIVIL NO. 07-00360 SOM/BMK; ORDER GRANTING MOTION FOR SUMMARY JUDGMENT